## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARY ALICE GRILLO and<br>SAMUEL A. GRILLO,<br>    Plaintiffs | : <br> : <br> : | CIVIL ACTION <br><br> NO.    04-2897 |
| v. | : | |
| BA MORTGAGE, LLC, Successor in<br>Interest by Merger of NATIONSBANC<br>MORTGAGE CORPORATION, | : <br> : <br> : | |
| and | : | |
| SPEAR & HOFFMAN, P.A.,<br>A Florida Professional Corporation, | : <br> : | |
| and | : | |
| SPEAR & HOFFMAN, P.A.,<br>A New Jersey Professional Corporation, | : <br> : | |
|     Defendants | : | |

### AMENDED COMPLAINT

### PRELIMINARY STATEMENT

1.    Plaintiffs Mary Alice Grillo and Samuel A. Grillo (the "Grillos"), bring this action for monetary damages in excess of $75,000.00, exclusive of interest and costs, against each of the Defendants resulting from the knowing, willful, and unlawful violation of the Grillos' constitutional, statutory and common law rights.

2.    Each of the Defendants, through wrongful and malicious use of civil proceedings, deprived the Grillos of lawful title to their family home without Due Process, even though the Grillos

made full payment of all sums needed to require the Defendants, under well-established law, to satisfy the Grillos' mortgage and the judgment against the Grillos, and allow the Grillos to keep their home.

## JURISDICTION AND VENUE

3. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. §1331 because the Grillos' cause of action under 42 U.S.C. §1983 presents a purely federal question.

4. This Court has supplemental jurisdiction over this matter pursuant to 28 U.S.C. §1367(a) because all of the Grillos' state law causes of action are so related to their federal cause of action as to form part of the same case or controversy.

5. This Court also has original jurisdiction over this matter pursuant to 28 U.S.C. §1332 because the amount in controversy exceeds $75,000.00, and all the parties are citizens of different states.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because this is the district in which a substantial part of the events giving rise to the Grillos' claims took place, and also is where the property is located that was the subject of those events.

## PARTIES

7. Plaintiffs Mary Alice Grillo and Samuel A. Grillo are individuals and husband and wife who reside at 270 South Ninth Street, Sellersvile, PA 18960.

8. Defendant BA Mortgage, LLC, Successor in Interest by Merger of Nationsbanc Mortgage Corporation, is a Delaware Limited Liability Corporation with a Certificate of Authority

to do business in Pennsylvania and an address for service of process care of CT Corporation, 1515 Market Street, Suite 1210, Philadelphia, PA 19102.

9. Defendant law firm Spear and Hoffman, P.A. (the "Florida Law Firm") is a Florida Professional Corporation doing business at 708 South Dixie Highway, Coral Gables, FL 33146. Upon information and belief, the Florida Law Firm does not possess a certificate of authority to do business in Pennsylvania, notwithstanding it having done so.

10. Defendant law firm Spear and Hoffman, P.A. (the "New Jersey Law Firm") is a New Jersey Professional Corporation doing business at 1020 North Kings Highway, Cherry Hill, NJ 08034. Upon information and belief, the New Jersey Law Firm does not possess a certificate of authority to do business in Pennsylvania, notwithstanding it having done so.

11. Upon information and belief, the New Jersey Law Firm was and is nothing more than the alter ego and/or agent of the Florida Law Firm, intended merely to satisfy the then requirement of Rule 1:21-1(a) of the New Jersey Court Rules that an out-of-state law firm maintain a bona fide office in the state of New Jersey.

12. Upon information and belief, at all times relevant hereto, the Florida Law Firm acted by and through the attorneys working at the New Jersey Law Firm office. Hereafter, the Florida Law Firm and New Jersey Law Firm Defendants collectively are referred to as "Spear and Hoffman."

## STATEMENT OF FACTS

### Events Leading Up To The Sale Of The Home

13. On October 17, 1988, the Grillos purchased their family home located at 270 South Ninth Street, Sellersville, PA 18960 (the "Home").

-3-

14. On April 17, 1997, a Judgment by Default in the amount of $153,910.86 was entered against the Grillos in favor of Nationsbanc Mortgage Corporation, f/k/a/ Keycorp Mortgage Inc. ("Nationsbanc"), as a result of the Grillos' inability to make timely payments on the mortgage executed by the Grillos in connection with the purchase of their Home.

15. From April 17, 1997, to December 14, 2000, the Grillos and their children continuously resided in the Home, notwithstanding several attempts by Defendant Nationsbanc to sell the Home at Sheriff's Sale, each of which was postponed by the Grillos filing a bankruptcy.

16. On December 14, 2000, pursuant to a Writ of Execution, a Sheriff Sale of the Home was again scheduled, this time for March 9, 2001.

17. According to the Writ of Execution and Bucks County Sheriff's Office Levy Sheet, the total amount of the Default Judgment and costs up to that time was $159,909.87, consisting of the original amount of the Default Judgment plus $5,999.01 in costs.

18. Pursuant to a Notice of Sale of Real Property sent by Spear and Hoffman, the Grillos were notified that the Home was scheduled to be sold at 11:00 a.m. on March 9, 2001, at the Doylestown, PA, Courtroom.

18. The Notice referenced the Default Judgment in the amount of $153,910.86 in favor of Nationsbanc, but listed the judgment creditor as BA Mortgage, LLC, Successor in Interest by Merger of Nationsbanc Mortgage Corporation ("BA/Nationsbanc").

20. On or about August 7, 2001, BA Mortgage, LLC and Nationsbanc filed a Statement of Merger with the Corporations Bureau of the Pennsylvania Department of State indicating that BA Mortgage, LLC and Nationsbanc had merged, and that BA Mortgage, LLC was the surviving corporation.

-4-

21. On March 7, 2001, Barry Krengel ("Krengel"), a partner in the law firm of Dolchin, Slotkin, and Todd, P.C. ("DS&T"), which represented the Grillos, caused to be hand delivered to Spear and Hoffman a certified check in the amount of $159,909.87 made payable to BA/Nationsbanc, representing the Default Judgment amount of $153,910.86 and costs of $5,999.01 set forth in the Writ of Execution, Sheriff's Office Levy Sheet, and Notice of Sale of Real Property.

22. The certified check was accompanied by a letter addressed to Pat Borkowski ("Borkowski"), an attorney with Spear and Hoffman.

23. In the letter, Spear and Hoffman was asked to confirm (1) that BA/Nationsbanc would cancel the sale of the Home scheduled for March 9, 2001 and (2) that by virtue of the Grillos full payment of the Default Judgment and costs, BA/Nationsbanc would mark the judgment and mortgage satisfied.

24. On March 8, 2001, having received no response from Spear and Hoffman, another letter was sent and was addressed to Robert Cusick, Esquire ("Cusick"), another attorney with Spear and Hoffman.

25. The letter was sent via facsimile and referenced a prior conversation on March 8, 2001 with Borkowski during which she acknowledged receipt of the March 7 payment and letter.

26. In the March 8 letter, a demand was made for BA/Nationsbanc to satisfy the judgment, and it cited 42 Pa.C.S.A. §8351. That statute requires a judgment creditor who receives full payment in the amount of a judgment to mark it satisfied.

27. The letter also cited three Pennsylvania Superior Court cases holding that once a mortgagor tenders the full amount of a judgment and costs prior to Sheriff's Sale, exactly as the Grillos had done, the mortgagee must satisfy the judgment and cancel the sale.

28. The letter cited, inter alia, Morgan Guaranty Trust Company of New York v. Mowl, 705 A.2d 923 (Pa. Super. 1998).

29. Later on March 8, another letter was sent to Cusick via facsimile which confirmed that during a prior conversation that day, Cusick (1) acknowledged receiving the earlier letter addressed to him; (2) stated he had not yet reviewed the cases Krengel cited; and (3) refused to cancel the Sheriff's Sale scheduled for the following day.

30. In this second letter, Spear and Hoffman was warned that if the Sheriff's Sale was not canceled, Spear and Hoffman and BA/Nationsbanc would be sued for violating the Grillos' constitutional rights under the authority of 42 U.S.C. § 1983. In support of this warning, Spear and Hoffman was directed to Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250 (3d Cir. 1994).

31. On March 9, 2001, at precisely 11:00 a.m., DS&T received from Spear and Hoffman via hand delivery the certified check the Grillos previously tendered in full payment of the judgment and costs.

32. The timing of the return of these funds made it impossible for the Grillos to attend the Sheriff's Sale and bid on the Home, as the sale was scheduled for the exact time the funds were returned to the office of DS&T, and the funds represented the bulk of the Grillos' assets available for use in retaining ownership of the Home.

33. Accompanying the returned check on March 9 was a letter from Spear and Hoffman stating that the reason the Grillos' check was returned was because it was insufficient. According to Spear and Hoffman, the amount necessary to satisfy the judgment and costs was the sum of $191,887.46.

34. Despite the Grillos' March 7 payment of $159,909.87, which was deemed insufficient to pay off the judgment and costs, Spear and Hoffman and BA/Nationsbanc caused the Sheriff of Bucks County to sell the Grillos' Home to BA/Nationsbanc for the sum of $845.94, which sale took place in direct violation of Pennsylvania law.

35. At no time prior to the March 9 sale of the Home to BA/Nationsbanc did DS&T or the Grillos ever communicate to Spear and Hoffman or BA/Nationsbanc a belief that statutory interest under 41 P.S. §202 was inapplicable to the Grillos' debt.

36. At no time prior to the March 9 sale of the Home to BA/Nationsbanc did Spear and Hoffman or BA/Nationsbanc ever inquire whether statutory interest under 41 P.S. §202 was inapplicable to the Grillos' debt.

37. Upon information and belief, immediately following BA/Nationsbanc's purchase of the Home, BA/Nationsbanc sold the Home with the legal assistance of Spear and Hoffman to the Federal Home Loan Mortgage Corporation ("Freddie Mac") for a purchase price of $191,887.46.

38. In doing so, BA/Nationsbanc immediately collected all sums BA/Nationsbanc claimed as being owing and due from the Grillos, rather than accepting the amount of $159,909.87 from the Grillos as required by Pennsylvania law in full satisfaction of the judgment and mortgage.

### Events After The Sale Of The Home

39. On March 19, 2001, the Grillos received an eviction notice from attorneys representing Freddie Mac stating that Freddie Mac was now the owner of the Home and that the Grillos and their children immediately had to vacate the premises.

40. Also on March 19, 2001, DS&T timely filed on behalf of the Grillos a Petition to Set Aside Sheriff's Sale Pursuant to Pennsylvania Rule of Civil Procedure 3132.

41. Three days earlier, DS&T sent a letter to Spear and Hoffman informing it of the impending Petition and again offering to make full payment on the judgment in exchange for a satisfaction.

42. On March 21, 2001, the Honorable Cynthia M. Rufe issued a Rule to Show Cause Why Sheriff's Sale Should Not be Set Aside, therein staying all eviction proceedings pending further Order of the Court and ordering the Sheriff of Bucks County to refrain from delivering the Deed.

43. That same day, a copy of this Order was sent by DS&T to Freddie Mac's attorneys, along with a letter highlighting the fact that eviction proceedings had been stayed.

44. On March 30, 2001, Spear and Hoffman filed on behalf of Nationsbanc an Answer to Petition to Set Aside Sheriff's Sale.

45. On May 7, 2001, DS&T served Spear and Hoffman with a Notice of Deposition and DS&T's first Request for Production of Documents in connection with the Petition to Set Aside Sheriff's Sale.

46. On June 5, Bonnie Dahl, Esquire ("Dahl"), another attorney with Spear and Hoffman, filed a Motion for Protective Order Under Rule 4012 seeking protection from DS&T's Request for Production of Documents.

47. On that same day, the Honorable Michael J. Kane issued a Rule to Show Cause why the Motion for Protective Order Under Rule 4012 should not be granted.

48. On June 25, 2001, DS&T filed its Response to Nationsbanc's Motion for Protective Order Under Rule 4012, and also filed a Memorandum of Law in support of that response.

49. Meanwhile, on July 5, 2001, despite Judge Rufe's Order staying all eviction proceedings and Freddie Mac's knowledge of that Order, the Grillos were contacted by Catherine

-8-

McDonald ("McDonald") of Rittenhouse R.E.O. Specialist as an agent acting on behalf of Freddie Mac.

50. McDonald informed the Grillos that Rittenhouse could help the Grillos move from their Home before the Sheriff physically removed them from the Home.

51. On October 5, 2001, attorneys from DS&T and Spear and Hoffman presented oral argument in connection with the Motion for Protective Order.

52. On November 16, 2001, DS&T filed a Memorandum of Law in support of its Petition to Set Aside Sheriff's Sale.

53. On November 25, 2001, Spear and Hoffman filed its Response to the Petition to Set Aside Sheriff's Sale.

54. Finally, on December 10, 2001, without conducting any evidentiary hearings, Judge Kane issued an Order granting the Motion for Protective Order and denying DS&T's Motion to Set Aside Sheriff's Sale. However, Judge Kane's Order did not lift the stay of eviction proceedings previously ordered by Judge Rufe.

### Events After Judge Kane's December 10 Order

55. On December 20, 2001, attorneys for Freddie Mac reinstated their Civil Action in Ejectment, notwithstanding the fact that Judge Kane's Order was not yet final as a matter of law and had not dissolved the stay of eviction proceedings previously entered by Judge Rufe.

56. On January 9, 2001, DS&T timely filed on behalf of the Grillos a Notice of Appeal to the Superior Court of Pennsylvania ("Appeal of Sheriff's Sale") from Judge Kane's December 10 Order.

57. On January 23, 2002, DS&T filed an Answer to Civil Action in Ejectment in the litigation with Freddie Mac.

58. On January 30, 2002, attorneys for Freddie Mac filed a motion for Summary Judgment in the Ejectment litigation.

59. On February 12, 2002, DS&T filed a Concise Statement of Matters Complained of on Appeal in the Appeal of Sheriff's Sale.

60. At all times relevant hereto, and continuing until the very end of the BA/Nationsbanc litigation, DS&T was communicating with representatives of Freddie Mac in an attempt to settle the Ejectment litigation on mutually agreeable terms, and to repurchase the Home from Freddie Mac to avoid an eviction of the Grillos.

61. On April 3, 2002, DS&T filed on behalf of the Grillos a legal brief in the Appeal of Sheriff's Sale.

62. On April 25, 2002, DS&T filed a Response to Freddie Mac's Motion for Summary Judgment, and a Memorandum of Law in Support of that response in the Ejectment litigation.

63. On July 23, 2002, oral argument was presented before the Superior Court of Pennsylvania in the Appeal of Sheriff's Sale.

64. Notwithstanding the pendency of the appeal, and despite the interdependent nature of the appeal and the Freddie Mac litigation, on August 19, 2002, Judge Kane issued an Order granting Freddie Mac's Motion for Summary Judgment and granting Freddie Mac "immediate possession" of the Home.

65. On September 10, 2002, DS&T filed a Notice of Appeal to the Superior Court from Judge Kane's August 19 Order granting Freddie Mac's Motion for Summary Judgment.

66. On November 8, 2002, DS&T and attorneys from Freddie Mac jointly filed a Motion for Extension of Briefing Schedule in the Freddie Mac litigation. Due to the pending Appeal of Sheriff's Sale, the attorneys for Freddie Mac believed that postponing the Freddie Mac appeal was proper.

67. On December 2, 2002, DS&T filed a legal brief in support of its appeal of Judge Kane's August 19 Order granting Freddie Mac's Motion for Summary Judgment.

68. On May 23, 2003, the Superior Court sua sponte consolidated the Grillos' appeals in the Appeal of Sheriff's Sale and Freddie Mac cases.

69. Finally, on June 10, 2003, the Superior Court reversed Judge Kane's December 10, 2001, Order and specifically granted the Grillos' Petition to Set Aside the Sheriff's Sale of the Home.

70. In doing so, the Superior Court stated that consistent with well-established law, when BA/Nationsbanc received the Grillos' "good faith" tender of $159,909.87 - the exact amount shown on the Writ of Execution and Sheriff's Levy Sheet - BA/Nationsbanc was required as a matter of law to accept that payment and satisfy the underlying mortgage and judgment.

71. The Superior Court stated that consistent with well-established law, BA/Nationsbanc "should have sought to amend its original judgment and writ of execution prior to the March 9, 2001 Sheriff's Sale" if it was entitled to additional sums from the Grillos, and significantly, the court stated it was "[p]erhaps in realization of this failure [that BA/ Nationsbanc] thereafter refused to accept [the Grillos'] tender of the full amount of the original judgment and further refused to cancel the sheriff's sale." Nationsbanc Mortgage Corp. v. Grillo, 827 A.2d 489, 492-93 (Pa. Super. 2003).

72. The court also stated that when the Grillos tendered $ 159, 909.87 in good faith, "the judgment was satisfied as a matter of law. It was legal error for [BA/Nationsbanc] to not accept [their] tender and legal error to not cancel the sheriff's sale." Id. at 493. Under well-established precedent, such conduct violated the Grillos' constitutional rights by taking the Home from them without Due Process. Id. at 492 n.9 (citing Morgan Guaranty Trust Company of New York, 705 A.2d at 926).

73. The precedent relied upon by the Superior Court was the same case law cited in the DS&T letter of March 8, 2001 that accompanied the Grillos' original payment.

### Current Events

74. On January 23, 2004, the Supreme Court of Pennsylvania denied BA/Nationsbanc's Petition for Allowance of Appeal from the Superior Court's June 10 decision, rendering the Superior Court's decision in favor of the Grillos final.

75. On or about April 29, 2004, the Grillos tendered full payment in the amount of $159,909.87 in satisfaction of the mortgage and judgment on the Home.

76. Upon information and belief, and as of the filing of this Amended Complaint, the mortgage and judgment have not been marked as satisfied.

### FIRST CLAIM FOR RELIEF

77. All paragraphs set forth in the Statement of Facts are hereby incorporated by reference.

78. At all times relevant hereto, Borkowski, Cusick and Dahl were acting within the course and scope of their duties as employees of Spear and Hoffman.

-12-

79. At all times relevant hereto, Spear and Hoffman was liable vicariously for the conduct of Borkowski, Cusick and Dahl.

80. The actions of BA/Nationsbanc and Spear and Hoffman violated 42 U.S.C. §1983. By invoking the judicial and law enforcement processes to sell the Grillos' Home at Sheriff's Sale after the Grillos made full payment of all sums necessary under Pennsylvania law to satisfy the mortgage and the judgment, BA/Nationsbanc and Spear and Hoffman each deprived the Grillos of their Home without due process and in violation of the United States Constitution.

81. In doing so, BA/Nationsbanc and Spear and Hoffman each acted under color of state law and in a manner that made each of them state actors for purposes of §1983 and, therefore, not immune from suit.

WHEREFORE, the Grillos respectfully ask this Honorable Court to award the Grillos a sum in excess of $1,000,000.00 to cover all the costs of litigation incurred as a result of the Defendants' knowing and unlawful conduct, including attorney's fees, compensatory damages, punitive damages, and such other monetary relief as the Court may deem just and equitable.

## SECOND CLAIM FOR RELIEF

82. All paragraphs set forth in the Statement of Facts are hereby incorporated by reference.

83. At all times relevant hereto, Borkowski, Cusick and Dahl were acting within the course and scope of their duties as employees of Spear and Hoffman.

84. At all times relevant hereto, Spear and Hoffman was liable vicariously for the conduct of Borkowski, Cusick and Dahl.

85.     The actions of BA/Nationsbanc and Spear and Hoffman violated 42 Pa.C.S.A. §§8351 and 8353. Although well-established state law required BA/Nationsbanc and Spear and Hoffman to accept the Grillos' March 7, 2001 tender of $159,909.87 and to satisfy the mortgage and the judgment, BA/Nationsbanc and Spear and Hoffman refused the Grillos' good faith tender and, instead, initiated civil proceedings against the Grillos culminating in the unconstitutional sale of the Home.

86.     Defendants took the aforesaid action so BA/Nationsbanc, with the advice and legal assistance of Spear and Hoffman, immediately could collect the sum of $191,887.46 from Freddie Mac. Defendants violated the Grillos' constitutional rights for reasons of pecuniary gain.

87.     In doing so, the Defendants each wrongfully initiated and continued civil proceedings against the Grillos in a grossly negligent manner and without probable cause, for an unlawful and malicious purpose completely contrary to any legitimate purposes for which those proceedings could be intended.

WHEREFORE, the Grillos respectfully ask this Honorable Court to award the Grillos a sum in excess of $1,000,000.00 to cover all the costs of litigation incurred as a result of the Defendants' knowing and unlawful conduct, including attorney's fees, compensatory damages, punitive damages, and such other monetary relief as the Court may deem just and equitable.

### THIRD CLAIM FOR RELIEF

88.     All paragraphs set forth in the Statement of Facts are hereby incorporated by reference.

89.     At all times relevant hereto, Borkowski, Cusick and Dahl were acting within the course and scope of their duties as employees of Spear and Hoffman.

-14-

90. At all times relevant hereto, Spear and Hoffman was liable vicariously for the conduct of Borkowski, Cusick and Dahl.

91. The actions of BA/Nationsbanc and Spear and Hoffman constituted the common law tort of malicious use of process. Although well-established state law required BA/Nationsbanc and Spear and Hoffman to accept the Grillos' March 7, 2001 tender of $159,909.87 and to satisfy the mortgage and the judgment, BA/Nationsbanc and Spear and Hoffman refused the Grillos' good faith tender and, instead, initiated civil proceedings against the Grillos culminating in the unconstitutional sale of the Home.

92. Defendants took the aforesaid action so BA/Nationsbanc, with the advice and legal assistance of Spear and Hoffman, immediately could collect the sum of $191,887.46 from Freddie Mac. Defendants violated the Grillos' constitutional rights for reasons of pecuniary gain.

93. In doing so, Defendants wrongfully used civil process against the Grillos without probable cause and for an unlawful and malicious purpose, completely at odds with the legitimate purposes for which such civil process could be intended.

WHEREFORE, the Grillos respectfully ask this Honorable Court to award the Grillos a sum in excess of $1,000,000.00 to cover from each of the Defendants all the costs of litigation incurred as a result of the Defendants' knowing and unlawful conduct, including attorney's fees, compensatory damages, punitive damages, and such other monetary relief as the Court may deem just and equitable.

## **FOURTH CLAIM FOR RELIEF**

94. All paragraphs set forth in the Statement of Facts are hereby incorporated by reference.

95. At all times relevant hereto, Borkowski, Cusick and Dahl were acting within the course and scope of their duties as employees of Spear and Hoffman.

96. At all times relevant hereto, Spear and Hoffman was liable vicariously for the conduct of Borkowski, Cusick and Dahl.

97. The actions of BA/Nationsbanc and Spear and Hoffman violated 21 P.S. §§681 and 682. Having received full payment from the Grillos of all sums necessary under Pennsylvania law to satisfy the mortgage and the judgment, and having further received the Grillos' request and demand that said mortgage be marked as satisfied, BA/Nationsbanc and Spear and Hoffman were statutorily required to do so. Instead, Defendants refused and wrongfully and maliciously initiated civil proceedings against the Grillos resulting in the unconstitutional taking of the Home.

WHEREFORE, the Grillos respectfully ask this Honorable Court to award the Grillos from each of the Defendants a punitive fine in the amount of $159,909.87, in addition to all other sums this Honorable Court awards the Grillos in connection with their First, Second, and Third Claims for Relief.

## FIFTH CLAIM FOR RELIEF

98. All paragraphs set forth in the Statement of Facts are hereby incorporated by reference.

99. The actions of Defendant BA/Nationsbanc violated 42 Pa.C.S.A. §8104(a) and (b). Having received full payment from the Grillos of all sums necessary under state law to satisfy the mortgage and the judgment, and having further received the Grillos' request and demand that said mortgage be marked as satisfied, BA/Nationsbanc was statutorily required to do so. Instead,

Defendant BA/Nationsbanc refused and wrongfully and maliciously initiated civil proceedings against the Grillos resulting in the unconstitutional taking of the Home.

WHEREFORE, the Grillos respectfully ask this Honorable Court to award the Grillos from Defendant BA/Nationsbanc liquidated damages in the amount of $2,500.00, in addition to all other sums this Honorable Court awards the Grillos in connection with their First, Second, Third and Fourth Claims for Relief.

                              Respectfully Submitted,

                              DOLCHIN, SLOTKIN, & TODD, P.C.

Date: _____   By: _____
                                      JOEL W. TODD, ESQUIRE  #17719
                                      One Commerce Square - 24th Floor
                                      2005 Market Street
                                      Philadelphia, PA 19103
                                      (215) 665-3502
                                      **Attorney for Plaintiffs**